### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SCOTT PETERSON, on behalf of himself
and all others similarly situated,

      Plaintiff,                                Case Number.   6:19-cv-856-Orl-31LRH

v.

APRIA HEALTHCARE GROUP INC.,

      Defendant.

_____

## <u>FINAL JUDGMENT</u>

THIS MATTER came before the Court on Class Representative's Motion for Final

Approval of the Proposed Class Settlement (Doc. 46) and Class Counsel's Motion for Attorney's

Fees, Costs, and Expenses and Service Award (Doc. 43) .  The Court has considered all papers

filed and proceedings in this matter and is fully informed regarding the facts surrounding the

proposed settlement.  Based upon this information, the Court has determined to approve the

proposed settlement and fee application as fair, reasonable and adequate.  The Court hereby enters

this Final Judgment, which constitutes a final adjudication on the merits of all claims of the

Settlement Class.

On June 17, 2020, this Court granted preliminary approval to the proposed settlement

between Class Representative and Defendant Apria Healthcare Group Inc. and Apria Healthcare

LLC ("Apria") (Doc. 41).  The proposed settlement resolves all of the Class's claims against Apria

in exchange for Apria's agreement to provide certain non-monetary relief, as well as Apria's

agreement to pay claims made by eligible Class Members as set forth in the Settlement Agreement

and Release of Claims ("Agreement").  On October 30, 2020, this Court held a fairness hearing to

consider whether to grant final approval to the settlement and to consider Class Counsel's

1

application for an award of attorneys' fees and costs ("Fee Application").  The Court heard

argument from counsel in support of the settlement and/or the Fee Application.  No other persons

appeared at the hearing, and no objections to the settlement were filed.

Having read, reviewed and considered the papers filed in support of final approval of the

settlement, including supporting declarations and oral argument of counsel, it is hereby

ORDERED, ADJUDGED AND DECREED that:

1. The definitions and provisions of the Settlement Agreement and Release of Claims

(the "Agreement") are incorporated in this Order as though fully set forth herein.

2. This Court has jurisdiction over the subject matter of the Agreement with respect to

and over all parties to the Agreement, including Class Representative and all members of the

Settlement Class.

3. The Court approves the settlement and finds the settlement is, in all respects, fair,

reasonable, and adequate to the Settlement Class, within the authority of the parties, and the result

of extensive arm's length negotiations with the guidance of an experienced mediator.

4. This Court confirms the proposed Settlement Class satisfies the requirements of Fed.

R. Civ. P. 23, as found in the Court's Order Preliminarily Approving Class Settlement,

Conditionally Certifying Settlement Class, and Approving Form and Manner of Notice

("Preliminary Approval Order") (Doc. 41).  Accordingly, this Court makes final the conditional

certification set forth in the Preliminary Approval Order.

## Certification of the Settlement Class

5. As an initial matter, the Court must determine that the proposed Settlement Class is

appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004)); *Amchem*

*Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class,

proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16.  District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

6.     The first prerequisite to class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). While the exact size of the putative class need not be specified, "'generally less than twenty-one is inadequate, more than forty adequate; with numbers between varying according to other factors.'" *Cox v. Am. Cast. Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice para. 23.05[1] n.7 (1978)).

7.     Here, Apria has placed calls to thousands of unique cellular phone numbers. Although Apria asserts that its records do not permit efficient determination of whether calls Apria placed may have reached someone other than the Apria customer who provided the phone number, it is reasonable to infer that number exceeds forty.  Thus, the numerosity requirement is satisfied.

8.     The second prerequisite to class certification is commonality, which "requires the

plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The commonality requirement presents a low hurdle, as commonality does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC,* 297 F.R.D. 504, 515 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 564 U.S. at 359. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations omitted); *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc*., 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

9.      Here, the commonality requirement of Rule 23(a)(2) is satisfied. Questions of fact and law common to the Settlement Class include, among others:

(a)      whether between May 6, 2015 and the present, Defendant used an ATDS or artificial or pre-recorded voice to place calls and/or send text messages to the cellular telephones of Plaintiff and putative Class Members;

(b)      whether Defendant obtained prior express consent from Plaintiff and putative Class Members to place calls or send text messages to their cellular telephones using an ATDS or artificial or pre-recorded voice;

(c)      whether Defendant's conduct violates the TCPA;

(d)      whether Defendant's conduct was negligent;

(e)     whether Defendant's conduct was knowing and/or willful;

(f)     whether Defendant is liable for damages, and the amount of such damages; and

(g)     whether Plaintiff and putative Class Members are entitled to declaratory relief.

10.     The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co*., 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement 'mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.'"). Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

11.     Here, the typicality requirement is satisfied for the same reasons that Plaintiff's claims meet the commonality requirement.  Specifically, Plaintiff and Settlement Class Members were each subjected to the same conduct – they all received phone calls and text messages from Defendant from May 6, 2015 to present to telephone numbers to which they allegedly did not consent to receive. Plaintiff's claim is typical because he claims he did not consent to receive calls or text messages from Defendant.

12.     As to adequacy, Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:54.

Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625-26.

13.     Plaintiff is a member of the Settlement Class and he does not possess any interests antagonistic to the Settlement Class. In addition, proposed Class Counsel are experienced in class action litigation, including TCPA actions, and have submitted a declaration establishing their skills and experience in handling class litigation around the country and in this District. *See* Doc. 40-5 ¶¶ 3–7, 17, Ex. A thereto. Accordingly, the requirements of Rule 23(a) are met.

14.     In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig*., 286 F.R.D. 645, 650 (S.D. Fla. 2012). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i) questions of law and fact common to members of the class predominate over any questions affecting only individuals, and that (ii) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc*., 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on 'whether there are common liability issues which may be resolved efficiently on a class-wide basis.'" *Agan v. Katzman & Korr, P.A*., 222 F.R.D. 692, 700 (S.D. Fla. 2004). The Settlement Class meets these requirements.

15.     Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes,* 564 U.S. at 349-60, and whether the proposed class is "sufficiently cohesive to warrant adjudication by

representation." *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *BellSouth Telecomms., Inc*., 275 F.R.D. at 644 (citing Klay, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . ."). Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all settlement class members of the class in a single adjudication." *Tornes v. Bank of America, NA* (In re Checking Account Overdraft Litig.), 275 F.R.D. 654, 660 (S.D. Fla. 2011). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, pp. 123-124 (3d ed. 2005)).

16.     Common issues predominate here because the central liability question in this case — whether Defendant sent or caused calls and text messages to be sent to the Settlement Class Members' telephone numbers via use of an ATDS — can be established through generalized evidence. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir. 2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

17.     Because the claims are being certified for purposes of settlement, there are no issues

with manageability, and resolution of numerous potential claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

18.     Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc*., 281 F.3d 1350, 1359 (11th Cir. 2002)).

19.     Factors the Court may consider are: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class.  As noted earlier, any perceived difficulties managing the Settlement Class need not be considered in this settlement context. *Amchem*, 521 U.S. at 620; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302-303 (3d Cir. 2011) (holding that potential variances in different states' laws would not defeat certification of a settlement-only class because trial management concerns were not implicated by a settlement-only class, as opposed to a litigated class).

20.     Here, resolution of numerous potential claims in one action is superior to individual

lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants.

21.     Moreover, there is no indication that Members of the Settlement Class have an interest in individual litigation or an incentive to pursue their claims individually, given the small amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Additionally, the proposed Settlement will give the parties the benefit of finality, and because this case has now been settled, pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case . . . would present intractable management problems. . . .").

22.     Accordingly, all requirements for certification of the Settlement Class are met here, and the Court finally certifies the class for settlement purposes.

23.     Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

24.     As discussed above, and as explained in Class Counsel's Declaration (Doc. 40-5), proposed Class Counsel have experience prosecuting class actions and other complex litigation. Further, proposed Class Counsel have investigated and prosecuted the claims in this matter, have dedicated resources to the investigation of those claims, and have negotiated the settlement of this matter to the benefit of Plaintiff and the proposed Settlement Class. Accordingly, the Court finally appoints John Allen Yanchunis Sr. and Patrick A. Barthle of Morgan & Morgan Complex Litigation Group as Class Counsel.

## Final Approval of the Settlement

25.     After determining that a proposed settlement class is appropriate for certification, courts next consider whether the proposed settlement itself warrants approval.

26.     Specifically, in deciding whether to approve the Settlement, the Court must determine whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson v. EverBank*, No. NO. 14-CIV-22264-BLOOM/VALLE, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016).

27.     Amended Rule 23(e)(2) standardizes the factors governing final approval, directing that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

28.     The first two factors under the amended Rule 23(e)(2) are intended to "look" to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note. In determining whether these factors are satisfied the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note.

29.     As explained above, Plaintiff and Class Counsel have adequately represented the Class.  Moreover, the Settlement was negotiated at arm's length using experienced mediator Jill R. Sperber.  (Doc. 40-5 ¶ 11); *see also Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").  Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

30.     The Settlement provides fair, reasonable, and adequate relief to the Settlement Class Members, especially in light of the numerous significant risks if this case had proceeded towards ruling on class certification, dispositive motions, and trial.  In determining whether a settlement is fair, given the potential range of recovery, "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."  *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (King, J.), *aff'd*, 899 F.2d 21 (11th

11

Cir. 1990).  Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.  This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement.").  Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988); *see also, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

31.     Given the number of claims submitted, there will be no *pro rata* reduction and each claimant will receive the full $50.00 per claimant envisioned by the Settlement Agreement. (Doc. 46); *see also* (Doc. 40-1 ¶ 1.01).  This per-claimant benefit compares favorably to other "wrong-number" settlements.[1]

---

[1] *See, e.g., Markos v. Wells Fargo Bank, N.A.*, No. 15-cv-1156 (N.D. Ga.) ($16.4 million for 3,296,755 class members, $4.97 per class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270 (N.D. Ga.) ($30.4 million for 6,409,689 class members, $4.74 per class member); *Luster v. Wells Fargo Dealer Servs.*, No. 15-cv-1058 (N.D. Ga.) ($14.8 million for 3,128,914 class members, $4.73 per class member); *Gehrich v. Chase Bank USA, N.A.*, No. 12-cv-5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016) ($34 million for more than 32 million class members, $1.06 per class member); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) ($24.15 million for 7,792,256 class members, $3.10 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($17.1 million for 4,546,293 class members, $3.76 per class member); *Duke v. Bank of Am., N.A.*, No. 12-cv-04009 (N.D. Cal.) ($32,083,905 for approximately 7,723,860 class members, $4.15 per class member); *Connor v. JPMorgan Chase Bank*, No. 10-cv-1284 (S.D. Cal.) ($11,665,592.09 for 2,684,518 class members, $4.35 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) ($39,975,000 for 9,065,262 class members, $4.41 per class member); *In re Capital One Tel. Consumer Protection Act Litig.*, No. 12- cv-10064 (N.D. Ill.) ($75,455,098 for 16,645,221 class members, $4.53 per class member); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ($12.2 million for 47 million class members, $0.26 per class member); *Adams v. AllianceOne*

32.    Continued litigation would have involved substantial delay and expense, which further counsels in favor of final approval.  Had Plaintiff succeeded in obtaining class certification on a contested basis, Plaintiff and the Settlement Class could still have faced a challenge to the certification decision of the Court, as well as summary judgment, a trial on the merits, and a post-judgment appeal. The uncertainties and delays from this process would have been significant. As a result, recovery by any means other than settlement would have required additional complex, protracted and expensive litigation.

33.    Because this case involves what is often termed "misdirected" automated calls and texts, class certification was far from certain. *See, e.g.*, *Sandoe v. Bos. Sci.Corp.*, No. 18-cv-11826, 2019 WL 5424203 (D. Mass. Oct. 23, 2019) (denying class certification); *Tomeo v. CitiGroup, Inc.*, No. 13-cv-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) (denying class certification); *Davis v. AT&T Corp.*, No. 15-cv-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017) (denying class certification).  Further, with respect to the merits of Plaintiff's claims, some courts have found that misdirected calls may not even be actionable under the TCPA and that a defendant's reasonable reliance on the consent of the customer it intended to reach may defeat the claim.  *See, e.g.*, *Roark v. Credit One Bank, N.A.*, No. 16-cv-173, 2018 WL 5921652 (D. Minn. Nov. 13, 2018). Courts,

---

*Receivables Mgmt. Inc.,* No. 08-cv-00248 (S.D. Cal.) ($9 million for more than 6,079,411 class members, $1.48 per class member); *Luster et al. v. Wells Fargo Bank, N.A.*, 15-cv-01058, Dkt. Nos. 72-1, 80 (N.D. Ga. 2017) (granting final approval of settlement creating a $14.8 million fund for unauthorized robocalls with 301,000 claims made, approximately $33 per claimant after deduction of attorneys' fees, costs, and awards); *Bradshaw v. Bank of Am. Corp.*, No. 13-cv-0431-LAB (JLB) (S.D. Cal.) (settlement fund of over $32,000,000 providing payment of $20 to $40 per class member depending on number of claims submitted); *Couser v. Comenity Bank*, No. 12-cv-2484-MMA-BGS (S.D. Cal.) (settlement fund of $8,475,000 providing payment of $13.75 per class member); *In re Prescription Pads TCPA Litigation*, No. 13-cv-6897 (N.D. Ill.) (settlement fund of $1,000,000 providing payment of up to $20.00 per class member); *Kolinek v. Walgreen Co.*, No. 13-C-4806 (N.D. Ill.) (settlement fund of $11,000,000 providing payment of approximately $30.00 per class member).

including the Eleventh Circuit, have found – as Apria would argue here – that dialer equipment that dials phone numbers from a list of numbers instead from a list of randomly or sequentially generated numbers does not meet the statutory definition of an ATDS.  *See Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304-05 (11th Cir. 2020).

34.     Considering the uncertainties inherent in continued litigation, including class certification, trial, and an appeal of this case, along with the delays and complexities inherent in this type of litigation, the relief provided for the class by the Settlement is fair, reasonable, and adequate.

35.     The Settlement relief will be distributed via a straight-forward claims process and an easy to understand and use claim form.  (Doc. 40-1 § 4).  Checks for approved claims will then be mailed and postmarked as soon as practicable, but no later than ninety (90) days after Final Approval (as defined in the Agreement). (Doc. 40-1 ¶¶ 1.05, 2.01).

36.     Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on the Class relief.  (Doc. 40-5 ¶ 11).  As explained further below, Plaintiff has sought attorneys' fees of up to thirty-three percent (33%) of the Settlement Fund, plus reasonable out-of-pocket costs and litigation expenses incurred by Class Counsel.  Attorneys' fees, costs, and expenses, in whatever amount set by the Court, are to be paid no later than thirty (30) days after the date of Final Approval (as defined in the Agreement).  (Doc. 40-1 ¶ 4.02).

37.     The parties have agreed to a maximum number of exclusions, above which Apria could have elected to terminate this agreement. (Doc. 40-1 ¶ 3.05).  Here, only one request for exclusion was received, that of Leonard Bullock.  This is far below the side-agreement.  This Order shall not bind or affect Leonard Bullock.

38.     Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed. Subsection (C) of Rule 23(e)(2) is therefore met.

39.     The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Here, the Settlement treats all Class Members equitably relative to one another because all Class Members who received an unconsented-to text or call are eligible for compensation in the amount of $50 following submission of a claim form.  In light of the number of claims, that amount will not be decreased *pro rata*.

40.     No objections have been received, timely or otherwise. (Doc. 46-1 ¶ 11).

41.     Accordingly, the Court hereby grants final approval to the settlement and finds that it is fair, reasonable, and adequate, and in the best interests of the Class as a whole.

42.     Neither this Final Judgment nor the Agreement is an admission or concession by Apria of the validity of any claims or of any liability or wrongdoing or of any violation of law. This Final Judgment and the Agreement do not constitute a concession and shall not be used as an admission or indication of any wrongdoing, fault or omission by Apria or any other person in connection with any transaction, event or occurrence, and neither this Final Judgment nor the Agreement nor any related documents in this proceeding, nor any reports or accounts thereof, shall be offered or received in evidence in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to consummate or enforce this Final Judgment, the Agreement, and all releases given thereunder, or to establish the affirmative defenses of *res judicata* or collateral estoppel barring the pursuit of claims released in the Agreement.

43.     This Court hereby dismisses with prejudice all claims of Class Representative  and members of the Settlement Class against Apria arising out of or relating in any way to the TCPA,

or any calls or text messages received from Released Parties at any time from May 6, 2015 to the present, including, but not limited to, claims that have been, or could have been, brought in the Action, as well as any claims arising out of the same nucleus of operative facts as any of the claims asserted in the Action, as set forth in the Agreement.

44.     Class Representative, for himself and as the representative of the Class, and on behalf of each Class Member who has not timely opted out and each of their respective agents, successors, heirs, assigns, and any other person who can claim by or through them in any manner, fully, finally, and forever irrevocably release, relinquish, and forever discharge with prejudice all Released Claims against the Released Parties.

45.     By operation of this judgment, the Class  Representative and Apria expressly waive, and each Class Member is deemed to have waived, any and all claims, rights, or benefits they may have under California Civil Code § 1542 and any similar federal or state law, right, rule, or legal principle that may apply.  California Civil Code § 1542 provides as follows:

> A general release does not extend to claims that the creditor or
> releasing party does not know or suspect to exist in his or her favor at
> the time of executing the release and that, if known by him or her,
> would have materially affected his or her settlement with the debtor
> or released party.

46.     Apria completed the delivery of class notice according to the terms of the Agreement.  The Notice given by Apria to the Settlement Class, which set forth the principal terms of the Agreement and other matters, was the best practicable notice under the circumstances.  The notice program prescribed by the Agreement was reasonable and provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to

16

all parties entitled to such notice.  The Notice given to members of the Class satisfied the

requirements of Federal Rule of Civil Procedure 23 and the requirements of constitutional due

process.  The Notice was reasonably calculated under the circumstances to apprise Class Members

of the pendency of this Action, all material elements of the settlement, and their opportunity to

exclude themselves from, object to, or comment on the settlement and appear at the final fairness

hearing.  The Court has afforded a full opportunity to all Class Members to be heard.  Accordingly,

the Court determines that all members of the Settlement Class, except for Leonard Bullock who

excluded himself from the Class, are bound by this Final Judgment.

47.     Within ten (10) days after the filing of the proposed Agreement in this court, Apria

served a notice of the proposed settlement upon the appropriate state official of each State in which

a Class member resides and upon the Attorney General of the United States.  The Court finds that

the notice provided by Apria satisfied the requirements of 28 U.S.C. § 1715(b) and that more than

ninety (90) days have elapsed since Apria provided the required notice, as required by 28 U.S.C. §

1715(d).

48.     Without affecting the finality of this judgment, the Court retains continuing

jurisdiction over (a) implementation of the Agreement, distribution of the settlement payments,

service awards, and attorneys' fees and costs contemplated by the Agreement, and processing of

the claims permitted by the Agreement, until each and every act agreed to be performed pursuant to

the Agreement has been performed, and (b) all parties to this Action and members of the Plaintiff

Settlement Class for the purpose of enforcing and administering the Agreement.

### Attorney's Fees, Costs, and Expenses, and Service Award

49.     Plaintiff also separately sought Attorney's Fees, Costs, and Expenses and a Service

Award for the Class Representative.  (Doc. 43).  Since the filing of that motion, the Eleventh

Circuit Court of Appeals decided *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). The court in *Johnson* determined, among other things, that an "incentive award" to the class representative—and specifically, based on the facts of that case, where such an award is drawn from the common fund created by the class representative's efforts—was impermissible. A petition for rehearing *en banc* is pending in *Johnson*. However, at present the Court remains bound by that decision. Accordingly, the request for a service award is DENIED. However, the Court retains jurisdiction to reconsider this decision denying a service award on the basis of *Johnson*, should the *Johnson* panel decision be vacated for rehearing *en banc*.

50.     As to Attorneys' Fees, Costs, and Expenses, Plaintiff seeks 30% of the Settlement Fund—or $52,500, which results in a negative multiplier on Class Counsel's lodestar—as well as costs and expenses of $7,359.50.

51.     In a class case as this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991). "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Id.* at 774. The Court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) and any other "unique" circumstances. *Camden 1* at 775. In *Camden I*, the Eleventh Circuit recognized that a fee award of 50 percent of the benefit is the upper limit; that the majority of fee awards fall between 20 and 30 percent. *Camden I*, 946 F.2d at 774-75. As stated in *Camden I*, 25 percent serves as the default "benchmark." *Id.* at 774-75; *see also In re Friedman's, Inc. Securities Litig.*, No. 1:03-cv-3475-WSD, 2009 WL 1456698, at *2 (N.D. Ga. May 22, 2009)

("[C]ommon fund cases in district courts in the Eleventh Circuit have awarded fee percentages within a range close to the 30% requested here.").

52.     For purposes of determining fees under the controlling percentage of the benefit fee-assessment method, the total value of the common fund or class benefit, both monetary and nonmonetary relief, are considered.  *Camden I*, 946 F.2d at 771; *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015).  Thus, notice and administration costs to be paid separately by defendants should also be included in valuing the total benefit to the class and hence the total fund from which Plaintiff's fee request is judged.[2]

53.     Here, Class Counsel seek a fee award of 30% of the Settlement Fund—or $52,500. However, in light of the separate payment for costs of notice and administration, and accounting

---

[2] *See, e.g.*, *Chieftain Royalty Co. v. XTO Energy Inc.*, CIV-11-29-KEW, 2018 WL 2296588, at *2 (E.D. Okla. Mar. 27, 2018) (noting that the "750,000 in administration, notice and distribution costs . . . is a significant benefit to the Settlement Class as such funds would otherwise be paid from the Gross Settlement Fund"); *In re classmates.com Consol. Litig.*, C09-45RAJ, 2012 WL 3854501, at *7 (W.D. Wash. June 15, 2012) ("Class counsel argues that the common fund should also include about $1.5 million in settlement administration costs that Classmates has paid or will pay . . . . Because Classmates' payment of these costs relieves the class of the burden of these expenses, the court may consider them as part of the common fund."); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 09 C 7670, 2011 WL 13257072, at *5 (N.D. Ill. Nov. 30, 2011) ("[T]he common-fund doctrine applies to the entire sum recovered by class counsel for purposes of settling a class action lawsuit. Because the costs of class action litigation necessarily include the costs of notice, administration of the settlement fund, incentive awards, and attorneys' fees, and because the settling defendants in these types of lawsuits have agreed to pay these costs 'in exchange for release of [their] liability,' the court finds that such costs are reasonably viewed as having been paid 'for the benefit of the class.'") (citations omitted); *cf, e.g.*, *Johnston v. Comerica Mtg. Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996) ("Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *David v. American Suzuki Motor Corp.*, 2010 WL 1628362 at *8 n.14 (S.D. Fla. Apr. 15, 2010) ("While I recognize that the fee award requested by Class Counsel will be paid separately by Defendants and is not drawn from a 'common fund' in the traditional sense, there is authority directing 'district courts to exercise their equitable jurisdiction to review counsel-fee arrangements negotiated in connection with class-action settlements—even where the counsel fees are not taken from a common fund but are instead paid separately by a class-action defendant.'") (quoting *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 4 (1st Cir.1999)).

for only the minimum anticipated amount for those costs ($33,000), this request amounts to only 25.2% of the total benefits provided to the Class.

54.     The Court has considered the twelve factors for evaluating the reasonable percentage to award class-action counsel, including: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  These twelve factors are not exclusive, however:  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *In re Sunbeam Sec. Litig*., 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 775).

55.     Class Counsel expended significant effort to achieve the settlement for the Class. Class Counsel have litigated this action for over a year, and reached a hard-fought settlement only after mediation. Although the present case was resolved before trial, Class Counsel invested significant time and resources investigating and litigating this action.  In performing this work on behalf of the Class, Class Counsel spent over 140 hours of attorney and other professional time, resulting in a lodestar of $108,816.20—as of the filing of the Motion for Fees, an amount which

has only increased since that time—without any assurance that the commitment of time and effort to this case would result in the payment of any fee. While seeking less than the full value of the time they spent to achieve the settlement here, Class Counsel should be compensated for the time and labor invested to obtain this resolution on behalf of the Class.

56.     As explained above regarding Final Approval of the Settlement, the issues presented required skilled counsel. Class Counsel prosecuted this case on a contingent fee basis. As such, they assumed a risk of nonpayment or underpayment.

57.     The requested fee is within the customary fees awarded in similar cases. "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007) (approving award equal to 30% of common fund). "These percentages are the prevailing market rates throughout the United States." *Id.* An award of 25.2% is below the upper-benchmark and less than the growing trend in this Circuit of 33 1/3% or above.[3] Likewise, such an award comports

---

[3] *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); *Seghroughni v. Advantus Rest, Inc.*, No. 12-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the maximum $2,020,000 common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, (Doc. 1557 at 8-10) (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-2152, (Doc. 626 at 7) (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory).

21

with other fee awards in similar cases.[4]  Accordingly, Class Counsel's requested fee award of $52,500, or 30% of the Settlement Fund—and 25.2% of the total cash value—is appropriate.

58.     The remaining *Camden I* factors also support Class Counsel's fee request. The burdens of this litigation and the results obtained on behalf of Plaintiff and the Class weigh in favor of the fee requested.  The fee request is rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333. "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1368 (S.D. Fla. 2011).

59.     In addition, the fact that no class member has objected to the settlement or its provision on attorneys' fees, costs, and expenses, weighs in favor of the fee requested.

60.     Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362-63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees . . . without discussing lodestar at all") (internal quotations marks, brackets and emphasis omitted).  Still, it has been used as a "cross-check" to the percentage-of-the-fund analysis.

61.     Here, Class Counsel have submitted documentation evidencing the time and hourly rates entered by attorneys and the professional staff of the firm in this matter, these individuals'

---

[4] *See, e.g.*, *Med. & Chiropractic Clinic, Inc. v. KMH Cardiology Centres Inc.*, 8:16-CV-644-T-23JSS, 2017 WL 11046397, at *2 (M.D. Fla. Nov. 17, 2017) (awarding 30% fee in TCPA class case); *James v. JPMorgan Chase Bank, N.A.*, 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (approving a 30% fee in TCPA class action); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (awarding 33 1/3 % in TCPA class case); *see also Cooper v. Nelnet, Inc.*, 6:14-CV-314-ORL, 2015 WL 4623700, at *2 (M.D. Fla. July 31, 2015) (awarding 27.78% of the Settlement Fund in TCPA class case that had only been pending for one and a half years).

qualifications, and identifying other cases in which their requested rates have been approved.  (Doc. 43 at 14; Doc. 43-1 at 5–10).  The rates sought, and time spent, are reasonable, and this lodestar cross-check provides further support for awarding the percentage of the fund sought here.

62.     Class Counsel has also identified the costs and expenses incurred in prosecuting this matter (Doc. 43-1 at 10–11), all of which are reasonable.

63.     Accordingly, the Court hereby awards attorneys' fees and costs to compensate Class Counsel for their time incurred and expenses advanced.  The Court hereby approves Class Counsel's fee request of 30% of the Settlement Fund—or $52,500—and approves and awards reimbursement of Class Counsel's costs and expenses of $7,359.50. All such fees are in lieu of fees and costs that Class Representative and/or the Class might otherwise have been entitled to recover.

64.     Apria shall pay the fee and cost awards to Class Counsel, and the service award to the Class Representative (if later permitted), as well as amounts due to eligible Class Members who timely filed a claim under the Agreement, in accordance with and at the times prescribed by the Agreement.

DONE and ORDERED in Chambers, Orlando, Florida on November 2, 2020.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:  Counsel of record
            Unrepresented parties